**NORTHTOWN THEATRE CORPORATION, Appellant,**

**v.**

**J. J. MICKELSON, Trustee of the Estate of Mill City Plastics, Inc., and Mill City Plastics Industries, Inc., its Successor, Bankrupt, Appellee.**

No. 15344.

United States Court of Appeals Eighth Circuit.

Oct. 21, 1955.

Rehearing Denied Nov. 28, 1955.

Louis B. Schwartz and Samuel P. Halpern, Minneapolis, Minn., on brief for appellant.

Charles H. Halpern, Minneapolis, Minn., on brief for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and STONE, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from an order of the Bankruptcy Court which affirmed an order of the Referee in Bankruptcy disallowing a claim of Northtown Theatre Corporation, appellant herein, for $876.82. The pertinent facts though somewhat complicated are not in dispute.

The Referee found in substance that prior to and during the month of August, 1953, Mill City Plastics was indebted on certain promissory notes secured by chattel mortgages which it had made and delivered for value and that during said month the indebtedness thus secured amounted to $8,658.92. It had defaulted in the payments on said indebtedness which were required under the terms of the instruments mentioned and the then holder of said notes and mortgages had declared the full amount of said indebtedness due and payable as permitted by said instruments and had made demand for full payment. In these circumstances, on September 17, 1953, Mill City Plastics being in distress refinanced its secured indebtedness aforesaid through the Northtown Theatre Corporation, appellant herein, pursuant to an agreement by the terms of which it agreed to pay Northtown the sum of $8,658.92, which was the amount then due and owing on said indebtedness and the amount which Northtown had paid to acquire said notes and mortgages, plus ". . . 8% simple interest, or a total of 12% for 18 months, with monthly installment payments to be made, including interest, as follows: September 18, 1953, $600.00; October 20, 1953, $558.00; and on the 20th day of each and every succeeding calendar month thereafter $540.00, for a total of 18 monthly payments". The effect of this agreement was to add to the liability of Mill City Plastics, the bankrupt, the sum of $1,039.80 in addition to the liability created by the notes which Northtown had acquired. This added liability is referred to in the agreement as a finance charge.

With the consent of Northtown the Trustee liquidated the personal property described as security in the chattel mortgages held by Northtown and on February 15, 1954 the proceeds of such liquidation came into the hands of the Trustee. The proceeds of such liquidation were in excess of the amount due Northtown on its secured claim but the proceeds of such liquidation and of the liquidation of all other properties in the bankrupt's estate were far from sufficient to pay all claims against the bankrupt's estate in full.

. Following the sale of the mortgaged property the Trustee paid Northtown the sum of $7,763.18 which Northtown accepted, the Trustee and Northtown agreeing, however, that such acceptance by Northtown should be without prejudice to its right to litigate the issues here involved. The principal amount due at the time of payment was $7,500.92 on which the Trustee calculated interest at the rate of 8% per annum to the date of payment making a total of $7,763.18.

It was the contention of the appellant before the Referee in Bankruptcy and before the trial court that it was entitled to interest up to the date when the indebtedness became payable instead of limiting the interest to the date of payment of the debt. The amount of this difference is $876.82. The trial court was of the view that the acceleration clauses in the circumstances disclosed by the record created a penalty and hence were unenforceable and that having invoked the acceleration clause as the basis for its claim to unearned interest it was not entitled to recover. The only question in this case is whether or not the court erred in limiting the right to collect interest to the date of payment rather than extending it to the date when the indebtedness became due and payable according to the written agreement of the parties.

The mortgages secured not only the payment of the principal debt but also the payment of interest. The question is therefore narrowed as to what effect the filing of bankruptcy proceedings by the debtor had on the right of appellant to payment of unearned interest.

It is argued that the court erred in holding that the acceleration of the date for payment upon its claim rendered its claim for unearned interest accruing subsequent to the filing of the bankruptcy proceeding unenforceable because the filing of the petition in bankruptcy froze the rights of all parties interested in the bankrupt estate and that appellant could not by the act of filing proof of its claim accelerate the time of payment. We think the argument is without merit. The effect of the court's holding on this question went to the clause in the notes and mortgages taken over by appellant when the debtor was in distress and the acceleration clause was in the nature of and provided for a penalty and was unenforceable. In other words, this clause would have been unenforceable regardless of whether bankruptcy proceedings ensued. The trial court in its decision on this phase of the case, among other things, said:

" * * * in cases like the present, where the mortgage is given to secure a fixed sum representing the aggregate of principal and the interest thereon for a period of the mortgage, the rule is that a clause accelerating the maturity of the debt will not be enforced except upon cancellation of the unearned interest, for to do so would be unconscionable. Holman v. Hollis, 1927, 94 Fla. 614, 114 So. 254; Williams Heirs v. Douglass, 1895, 47 La.Ann. 1277, 17 So. 805; Dugan v. Lewis, 1891, 79 Tex. 246, 14 S.W. 1024, 12 L.R.A. 93; Cissna Loan Co. v. Gawley, 1915, 87 Wash. 438, 151 P. 792, L. R.A.1916B, 807; 19 Ruling Case Law 496; cf. Lowenstein v. Phelan, 1885, 17 Neb. 429, 22 N.W. 561."

Certainly, the rule that the rights of all parties interested in the bankrupt's estate become frozen upon the filing of the petition in bankruptcy can confer no rights upon a preferred creditor which he did not have before the initiation of the bankruptcy proceeding.

In other words, if under the circumstances here disclosed appellant could not, by invoking the acceleration clause in his mortgage, have collected the unearned interest from the debtor he could not exact payment for such unearned interest from the bankrupt's estate. Bankruptcy Courts in the administration of estates are governed by equitable principles and while legal rights are preserved, legal remedies are lost and equitable remedies are substituted. Bindseil v. Liberty Trust Co., 3 Cir., 248 F. 112. In Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162, from which we quote with approval in United States Trust Co. of New York v. Zelle, 8 Cir., 191 F.2d 822, 825, it is among other things said:

" 'But bankruptcy courts must administer and enforce the Bankruptcy Act [11 U.S.C.A. § 1 et seq.] as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles.' * * *

\* \* \* \* \* \*

" 'For assuming, *arguendo*, that the obligation for interest on interest is valid under the law of New York, Kentucky, and the other states having some interest in the indenture transaction, we would still have to decide whether allowance of the claim would be compatible with the policy of the Bankruptcy Act.'
* * *

\* \* \* \* \* \*

" 'It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.' "

The applicable rule is well stated by the author of the article on bankruptcy in 6 Am.Jur. at page 809 as follows:

"The legality of a claim from a purely technical aspect does not preclude its disallowance or subordination on equitable grounds. The

bankruptcy court in passing on claims sits as a court of equity. It has the power to disallow or subordinate claims in the light of equitable considerations and can sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate. This power exists as a matter of the Federal law of bankruptcy."

Even in those rare cases where the assets of the bankrupt's estate are sufficient to pay all creditors in full interest is allowable only to the date of payment. In the instant case the assets are insufficient to pay the claims of general creditors and appellant has been paid the full amount of its claim with interest up to the time of payment. It is insisting on payment of unearned interest and quite aside from other considerations to allow such a claim in these circumstances would not be " 'compatible with the policy of the Bankruptcy Act' " but inequitable and unconscionable.

The order appealed from is therefore affirmed.